UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN METZ,<br><br>    Plaintiff,<br><br>  v.<br><br>JEFFREY LEEPER, et al. ,<br><br>    Defendants. | CASE NO. 2:25-cv-01511-JNW<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT |

## 1.  INTRODUCTION

This matter comes before the Court on Defendants City of Oak Harbor and Sergeant James Hoagland's motion for summary judgment. Dkt. No. 32. Metz, proceeding pro se, was convicted of criminal trespassing in state court, and now alleges various constitutional and state law violations arising from his arrest. For the reasons stated below, the Court GRANTS Defendants' motion.

## 2.  BACKGROUND

On January 15, 2025, the manager of Oak Harbor Motors called Oak Harbor dispatch to report a suspicious man walking around the dealership. The man was

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

filming through the window and the manager asked if she could help him. Dkt. Nos. 35-1 at 2; 35-3. Oak Harbor Police Department officers, including Sgt. Hoagland, responded to the report. Dkt. Nos. 35 ¶ 2; 33 ¶ 2. When they arrived, Metz was walking around the outside of the dealership. Dkt. No. 35-4 at 0:25–35. Metz told officers that he was on public property, taking pictures of "everything, from sea to shining sea." *Id.* at 1:30–34.

Over the course of the conversation, officers and the dealership manager informed Metz that he was on private property. *Id.* at 2:52–5:08. At one point, the manager expressly stated, "[i]t's not [public], it's owned by a private citizen." *Id.* at 4:34–37. The manager asked Metz to leave the property, *id.* at 4:30, a request that the officers reiterated, *id.* at 4:41–5:15. But Metz continued insisting that he was on public property and refused to leave. *Id.* An officer then handcuffed Metz and arrested him for Criminal Trespass in the Second Degree. *Id.* at 5:56; Dkt. No. 1 ¶ 12.

Metz disputes key aspects of this account. He contends that he was standing on a public-facing walkway serving a State of Washington vehicle-vessel licensing office, that no physical barriers or private-property signage marked the area, and that the walkway was routinely used by citizens conducting government business. Dkt. No. 41 ¶¶ 4–7. Metz also contends that Sgt. Hoagland solicited the trespass request from the dealership manager, that the manager did not initially ask him to leave, and that the officers themselves appeared uncertain about the property boundaries. *Id.* ¶¶ 9–10. Metz maintains that he never received a clear and lawful

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

trespass warning from a person with authority over the property before he was arrested. *Id.* ¶ 10.

The body-worn camera footage shows that during the arrest, officers handcuffed Metz, performed a pat-down search, and placed him in a patrol car. Dkt. No. 35-4. The officers attempted to offer alternatives to arrest before taking Metz into custody, and took care to protect Metz's property. *Id.* Metz did not resist. Dkt. No. 41 ¶ 13.

The Island County District Court convicted Metz of one count of Criminal Trespass in the Second Degree on June 12, 2025. Dkt. No. 23-2. Metz appealed to Island County Superior Court and his appeal remains pending. Dkt. No. 34 ¶ 4.

On August 7, 2025, Metz sued Sgt. Hoagland and the City of Oak Harbor, along with other individuals and municipalities involved in his arrest and conviction. Dkt. No. 1. The Court separately resolved Metz's claims against other defendants.[1] Only the claims against Sgt. Hoagland and City of Oak Harbor remain, which the Court addresses now.

Metz alleges that Defendants "subjected [him] to a campaign of harassment, retaliation, negligence, judicial abuse, prosecutorial misconduct, and unlawful arrest and assault," Dkt. No. 1 ¶ 2. He pleads § 1983 claims against Defendants, alleging they deprived him of his First, Fourth, and Fourteenth Amendment rights. *Id.* ¶ 22. He also raises a state law assault and battery claim against Sgt. Hoagland,

---

[1] Metz voluntarily dismissed Judge Eric Ohme and Island County without prejudice. Dkt. Nos. 26, 30. The Court dismissed all claims against Island County Prosecuting Attorney Jeffrey Leeper with prejudice on the basis of absolute prosecutorial immunity. Dkt. No. 43.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

and a negligence claim and failure-to-train claim against City of Oak Harbor. *Id.* ¶¶ 24, 26. Defendants move for summary judgment on all claims. Dkt. No. 32 at 8.

### 3.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, the nonmoving party must present "significant probative evidence tending to support the complaint." *Id.* at 249. To succeed on a motion for summary judgment, "[t]he defendant-movant must demonstrate that . . . the plaintiff cannot satisfy its burden to prove its claims." *JL Beverage Co., LLC v. Jim Bean Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The Court views the facts in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255.

Because Metz proceeds pro se, the Court construes his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even pro se litigants must point to some evidence creating a genuine dispute of material fact to survive summary judgment. *Celotex*, 477 U.S. at 324.

## 4.  DISCUSSION

Three categories of claims remain: (1) Metz's § 1983 claims alleging violations of his First, Fourth, and Fourteenth Amendment rights against both Defendants; (2) his state law assault and battery claim against Sgt. Hoagland; and (3) his negligence and failure-to-train claim against City of Oak Harbor. The Court addresses each in turn.

At the outset, the Court notes that the parties vigorously dispute whether Metz was on public or private property at the time of his arrest. The Court need not resolve *that dispute*. Metz was convicted of Criminal Trespass in the Second Degree, and that conviction has not been reversed, expunged, or otherwise invalidated. As explained below, the existence of that conviction is dispositive of Metz's federal claims under *Heck v. Humphrey*, 512 U.S. 477 (1994). Whether Metz was on public or private property is the province of the state court currently reviewing his appeal—not this Court in a § 1983 action where the conviction remains intact.

### 4.1    Summary judgment on Metz's § 1983 claims against Sgt. Hoagland.

Metz alleges that Sgt. Hoagland unlawfully detained and arrested him, and in doing so deprived him of his First, Fourth, and Fourteenth Amendment rights. Dkt. No. 1 ¶¶ 12, 22. All of these claims are barred by *Heck v. Humphrey*. Even if they weren't, Sgt. Hoagland is entitled to qualified immunity.

#### 4.1.1    False arrest (Fourth Amendment).

When a plaintiff brings a § 1983 claim related to criminal charges, "the district court must consider whether a judgment in favor of the plaintiff would

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487; *see also Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir. 2006) (holding that the plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy were barred because they would necessarily imply the invalidity of his convictions); *cf. Skinner v. Switzer*, 562 U.S. 521, 534 (2011) (holding that the plaintiff's § 1983 claim was permissible because success in his suit "would not 'necessarily imply' the invalidity of his conviction"). A claim for damages bearing that relationship to a conviction that has not already been invalidated—including one on appeal—is not cognizable under § 1983. *See Heck*, 512 U.S. at 487 (holding that the district court's dismissal was appropriate when the petitioner's direct appeal to his conviction was still pending because the conviction had not been invalidated).

Metz was found guilty of Criminal Trespass in the Second Degree under RCW 9A.52.080. His appeal remains pending before Island County Superior Court. Dkt. Nos. 34-2 at 2–3; 34 ¶¶ 2–4. Under the statute, "[a] person is guilty of criminal trespass in the second degree if he or she knowingly enters or remains unlawfully in or upon premises of another . . . ." RCW 9A.52.080(1). Metz's false arrest claim rests on his contention that he was on public property at the time of his arrest, rendering the arrest unlawful. But an element of the crime he was convicted of—criminal trespass—requires that he was on the premises of another and knowingly remained there unlawfully. A civil judgment in his favor on the premise that he was on public

property would thus necessarily imply the invalidity of his conviction. *Heck* bars this claim.

### 4.1.2    First Amendment retaliation.

Metz alleges that officers arrested him in retaliation for First Amendment protected activity—recording, observing, and questioning officers at a state-related business location. Dkt. Nos. 1 ¶ 22; 40 at 3. But Metz's First Amendment activity would only be constitutionally protected in a manner that would render his arrest retaliatory if he had a right to be where he was—that is, if he was on public property at the time. Accepting that premise would necessarily imply the invalidity of his trespass conviction. *Heck* therefore bars this claim as well.

Metz invokes the narrow exception recognized in *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019), arguing that criminal trespass for photographing a publicly accessible storefront is not an offense that routinely results in arrest. Dkt. No. 40 at 6. But the *Nieves* exception addresses whether the existence of probable cause defeats a retaliatory arrest claim on the merits. It does not overcome the *Heck* bar, which prevents this Court from reaching the merits in the first place. Because a judgment in Metz's favor on his retaliation claim would necessarily imply the invalidity of his conviction, the claim is not cognizable under § 1983 regardless of whether the *Nieves* exception might otherwise apply.

### 4.1.3    Excessive force (Fourth Amendment).

The Ninth Circuit has recognized that an excessive force claim can sometimes survive *Heck* when the claim is premised on disproportionate force during an

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

otherwise lawful arrest, because a finding of excessive force in that context would not necessarily imply the invalidity of the underlying conviction. *See Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1131–34 (9th Cir. 2011); *Smith v. City of Hemet*, 394 F.3d 689, 695–99 (9th Cir. 2005). The Court therefore considers whether Metz has articulated an excessive force theory independent of his contention that the arrest itself was unlawful.

He has not. Metz argues that "[h]andcuffing, pat-down, wallet seizure, and involuntary transport—all without lawful basis—constitute excessive force" because "[e]ven minimal force is unconstitutional if the underlying arrest lacked probable cause." Dkt. No. 40 at 7. But this theory is entirely derivative of his false arrest claim: Metz does not contend that the force was disproportionate to the situation; he contends that the arrest itself was illegal, making *any* force excessive. Because this theory requires a finding that the arrest lacked probable cause—which would necessarily imply the invalidity of his trespass conviction—it is barred by *Heck*.

Even setting *Heck* aside, while the district court is required to view the facts in the light most favorable to the nonmoving party when considering a motion for summary judgment, it should not adopt a version of fact that is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Thus, "a district court may properly view the facts in the light depicted by bodycam footage and its accompanying audio, to the extent the footage and audio *blatantly* contradict testimonial evidence." *Id.* (emphasis in original). The court also "need not accept as true conclusory allegations that are contradicted by

documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Here, the body-worn camera footage demonstrates that the force used was objectively reasonable under *Graham v. Connor*, 490 U.S. 386, 396 (1989). The footage shows officers handcuffing Metz, performing a pat-down search for weapons, and placing him in a patrol car—standard arrest procedures carried out without any signs of pain, distress, or resistance. Dkt. No. 35-4 at 5:55–8:45. The officers attempted to de-escalate the situation and offered alternatives before resorting to arrest. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. No reasonable jury could view this footage and conclude that the force was excessive.

### 4.1.4    Fourteenth Amendment.

Metz claims that his due process and equal protection rights were violated under the Fourteenth Amendment because officers "misrepresented property boundaries, act[ed] arbitrarily, [and] solicit[ed] false trespass requests." Dkt. Nos. 1 ¶ 22; 40 at 7. This claim is *Heck*-barred for the same reason as the others: it requires the Court to accept that, contrary to the officers' representations, Metz was on public property—a finding that would necessarily imply the invalidity of his trespass conviction.

### 4.1.5    Sgt. Hoagland is entitled to qualified immunity.

Even if Metz's § 1983 claims were not barred by *Heck*, Sgt. Hoagland would be entitled to qualified immunity. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)). District court judges may decide based on the circumstances of the particular case which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Whether an officer violated clearly established law turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)). A law that is "clearly established" requires that "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011)). It also requires that "the legal principle clearly prohibit the officer's conduct in the particular circumstances before him" with a high degree of specificity. *Id.*

Metz does not offer any evidence that Sgt. Hoagland acted objectively unreasonably or unlawfully. Metz's § 1983 claims rest on his belief that he was on public property, rendering his arrest unlawful. But Metz offers no evidence that the officers believed Metz was on public property or had any reason to question the dealership manager's representation that the property was privately owned. Instead, the Court is left with body-worn camera footage in which the officers both

hear the store manager tell Metz the dealership is privately owned, and that Metz needs to leave, and the officers continuously state that Metz is on private property and tell him to leave. Dkt. No. 35-4. No clearly established law prohibited an officer from arresting a person for trespass under these circumstances.

### 4.2    Metz's claims against the City of Oak Harbor fail.

Metz raises both a § 1983 municipal liability claim, and a state law negligence claim against the City. Neither survives summary judgment.

The Court begins with the federal claim. In support, Metz argues that the officer's body camera footage shows officers were "unaware of public-recording law," "misstated property law," "exercised jurisdiction they did not have," and "solicited a trespass." Dkt. No. 40. Metz claims the footage thus raises a jury question about the City's failure to train, "unconstitutional customs," and "policy maker ratification." *Id.* On this basis, Metz claims that City of Oak Harbor "failed to properly train or supervise employees, resulting in civil rights abuses" to Metz. Dkt. No. 1 ¶ 26. Metz's civil rights claims against City of Oak Harbor allege municipal liability for constitutional violations, and so fall under the *Monell* framework. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

As a threshold matter, "a public entity is not liable for § 1983 damages . . . when the factfinder concludes that an individual officer . . . inflicted no constitutional harm to the plaintiff." *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). Because Metz has failed to establish that any officer violated his

constitutional rights, there can be no municipal liability under *Monell*. That alone is sufficient to dispose of Metz's claim for municipal liability for civil rights abuses.

Even if a constitutional violation existed, however, Metz has not identified any City of Oak Harbor policy, custom, or practice that was the "moving force" behind it. *See Monell*, 436 U.S. at 694. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor"; the law requires that "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691 (emphasis in original). Metz argues that the body-worn camera footage shows officers were "unaware of public-recording law," "misstated property law," and "solicited a trespass." Dkt. No. 40 at 8. But even construing these allegations liberally, they do not identify a policy, custom, or deliberate indifference to training. Metz's *Monell* claim fails as a matter of law.

Metz also alleges that the City of Oak Harbor's negligently trained and supervised its officers. Dkt. No. 1 ¶ 26. This claim fails because Metz cannot establish the underlying tortious conduct necessary for any negligence theory against the City. The only injury Metz alleges flows from his arrest being unlawful. But as discussed above, Metz's conviction precludes a finding that the arrest was unlawful. Without tortious conduct by the officers, there is no basis for negligence liability against the City.

### 4.3    The Court dismisses Metz's assault and battery claim against Sgt. Hoagland.

Metz claims that he "was subjected to physical force and intimidation by Sgt. Hoagland, constituting assault and battery under Washington law." Dkt. No. 1 ¶ 24.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12

In Washington, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent." *McKinney v. City of Tukwila*, 13 P.3d 631, 641 (2000) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 9, at 39 (5th ed. 1984)). Assault is any act of such a nature that causes apprehension of battery. *Id.*

The body-worn camera footage shows that Sgt. Hoagland—the only Defendant named in the assault and battery claim—was not the officer who handcuffed Metz, conducted the pat-down, or placed Metz into the patrol car. Other officers performed those actions while Sgt. Hoagland stood several feet away. Dkt. No. 35-4 at 5:55–8:45. The only time Sgt. Hoagland is seen touching Metz is when he briefly assists another officer in pulling up Metz's sleeve during handcuffing. *Id.* at 6:07. Metz does not identify any other contact by Hoagland, and the footage reveals none.

This minimal contact falls squarely within the contact or force that officers may use during an arrest. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The contact here was minimal, incident to a lawful arrest, and there is no evidence of harmful or offensive contact. Therefore, Stg. Hoagland's contact with Metz did not amount to assault and battery.

### 4.4    Metz's Heck-barred claims are dismissed without prejudice, but the remaining claims are dismissed with prejudice.

The Court addresses the appropriate terms of dismissal. Metz's § 1983 claims for false arrest, First Amendment retaliation, and Fourteenth Amendment due process violations are barred by *Heck* because they would necessarily imply the invalidity of his conviction. Under *Heck*, these claims do not accrue until the conviction is invalidated. 512 U.S. at 489–90. Should Metz's conviction be reversed on appeal, these claims may become cognizable, and he may refile them at that time. The Court therefore dismisses these claims without prejudice.

Metz's remaining claims—excessive force, municipal liability, state law negligence, and assault and battery—fail on grounds independent of *Heck*. The excessive force claim fails both because Metz's theory is entirely derivative of his unlawful arrest claim and because the force was objectively reasonable on the undisputed video evidence. The municipal liability and negligence claims fail because there is no underlying constitutional violation or tortious conduct and because Metz has failed to identify any City of Oak Harbor policy, custom, or practice to support a *Monell* claim. And the assault and battery claim fails because the body-worn camera footage conclusively shows that Sgt. Hoagland's only contact with Metz was a brief, privileged touch during handcuffing. These claims are dismissed with prejudice.

## 5.   CONCLUSION

Accordingly, Defendants' motion for summary judgment is GRANTED. Dkt. No. 32. Metz's § 1983 claims against Sgt. Hoagland for false arrest, First

Amendment retaliation, and Fourteenth Amendment due process violations are DISMISSED WITHOUT PREJUDICE. Metz's remaining claims—for excessive force, municipal liability, negligence, and assault and battery—are DISMISSED WITH PREJUDICE. The Clerk is directed to CLOSE this case.

Dated this 5th day of May, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15